UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE GONZALEZ GONZALEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALEJANDRO N. MAYORKAS, Secretary of ) <br> the U.S. Department of Homeland Security; ) <br> UR M. JADDOU, Director of U.S. Citizenship ) <br> and Immigration Services; LOREN MILLER, ) <br> Director of Nebraska Service Center, U.S. ) <br> Citizenship and Immigration Services, ) <br> ) <br> Defendants. ) | No. 21 C 204 <br><br> Judge Sara L. Ellis |

**OPINION AND ORDER**

After U.S. Citizenship and Immigration Services ("USCIS") denied Plaintiff Jose Gonzalez Gonzalez's Deferred Action for Childhood Arrivals ("DACA") renewal request in 2020, Gonzalez filed suit against Defendants Alejandro N. Mayorkas, the Secretary of the U.S. Department of Homeland Security ("DHS"); Ur M. Jaddou, the Director of USCIS; and Loren Miller, the Director of USCIS' Nebraska Service Center.[1] Gonzalez claims that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, when USCIS denied his DACA renewal request because it misapplied DACA's eligibility criteria, misconstrued Illinois and federal immigration law, and violated its own procedures for adjudicating DACA applications.[2] Gonzalez seeks a declaration that Defendants acted unlawfully and an order requiring Defendants to readjudicate his DACA renewal request in compliance with state and

---

[1] Gonzalez's initial complaint named the Acting DHS Secretary and the Acting Director of USCIS. The Court substitutes the current occupants of those positions pursuant to Federal Rule of Civil Procedure 25(d).

[2] Gonzalez also brought a due process claim, but he has since withdrawn that claim.

federal law. Defendants have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because the Court does not have subject matter jurisdiction over Gonzalez's challenge to the denial of his DACA renewal request, the Court dismisses this case without prejudice.

## BACKGROUND

**I.  DACA**

In June 2012, the DHS Secretary issued a memorandum (the "DACA Memo") announcing an immigration program, DACA, for "certain young people who were brought to this country as children and know only this country as home." Doc. 16-2 at 2. The DACA Memo provided that DHS could consider certain individuals brought to the United States as children for prosecutorial discretion by deferring action on their deportation and providing work authorization during the period of deferred action for two-year periods of time, subject to renewal.[3] The determination to defer action under DACA is discretionary and made on a case-by-case basis. Nonetheless, the DACA Memo listed the following threshold criteria that an individual must satisfy before being considered for DACA: (1) arrival in the United States before one's sixteenth birthday; (2) being under thirty-one years of age as of June 15, 2012; (3) continuous residence in the United States since 2007; (4) being a current student, having completed high school or obtained a general education development certification, or receiving an honorable discharge from the military; and (5) not having been convicted of a felony, a

---

[3] On September 5, 2017, the Acting DHS Secretary issued a memorandum rescinding DACA, indicating that DHS would not accept any new applications but would entertain renewal applications from those DACA recipients whose benefits would expire within six months, with the remaining existing DACA grants expiring on their own terms. After the Supreme Court held that the 2017 memorandum violated the APA, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, --- U.S. ----, 140 S. Ct. 1891 (2020), the then-Acting DHS Secretary issued a memorandum in July 2020 withdrawing the 2017 memorandum and resuming adjudication of DACA renewal requests but only for one-year terms. In December 2020, after a federal district court vacated the 2020 memorandum, USCIS began adjudicating DACA requests and renewals pursuant to the terms of the DACA Memo.

significant misdemeanor, multiple misdemeanors, or otherwise posing a threat to national security or public safety. The DACA Memo clarified that it "confers no substantive right, immigration status or pathway to citizenship." *Id.* at 4.

To implement the DACA memo, DHS issued National Standard Operating Procedures for DACA (the "DACA SOP"). The DACA SOP provides guidance to USCIS Service Centers adjudicating DACA requests. With respect to criminal convictions, the DACA SOP defines a "significant misdemeanor" as one that has a maximum term of imprisonment of greater than five days but one year or less and that either (1) "[r]egardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence;" or (2) "[i]f not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days." *Id.* at 91. It further provides that if "an individual has a conviction for [a felony, significant misdemeanor, or three or more non-significant misdemeanors] or may be a national security or public safety threat, USCIS will deny the request for deferred action, unless exceptional circumstances are found." *Id.* at 90. And because of the "serious nature" of a felony or significant misdemeanor, the DACA SOP indicates that "it would take a truly exceptional circumstance to overcome the underlying criminal, national security, and public safety grounds that would otherwise result in not considering an individual for DACA, which would be rare." *Id.* Additionally, the DACA SOP states that "[n]otwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances" and that "DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual

was sentenced to time in custody of 90 days or less." *Id.* at 91. Finally, the DACA SOP provides that "[a] DACA requestor's criminal record may give rise to significant public safety concerns even where there is not a disposition of conviction" and that "an individual arrested for multiple assaults or other violent crimes could be deemed a public safety risk even if he/she was never convicted for those crimes." *Id.* at 98.

## II.     Gonzalez's DACA Requests

Gonzalez, a thirty-four-year-old Ecuadorian citizen who entered the United States at the age of fifteen in September 2002, lives in Chicago. USCIS approved Gonzalez's first DACA application on July 29, 2013 for a two-year term. On March 11, 2015, Gonzalez filed a request for renewal for an additional two-year term. USCIS processed Gonzalez's 2015 request through its Texas Service Center.

While USCIS considered the 2015 request, the Chicago Police Department arrested Gonzalez on October 10, 2015 on a charge of domestic battery under 720 Ill. Comp. Stat 5/12-3.2-A-2. A state court also issued an order of protection against Gonzalez in connection with the arrest. On January 28, 2016, the state dropped the domestic battery charge and Gonzalez instead pleaded guilty to reckless conduct in violation of 720 Ill. Comp. Stat. 5/12-5-A-1, a charge that does not include an element of domestic battery. The state court did not impose a sentence of imprisonment.

On December 2, 2015, the USCIS Texas Service Center Director issued a request for evidence ("RFE") concerning the circumstances of Gonzalez's October 2015 arrest. Gonzalez responded to the RFE on May 17, 2016, providing the arrest report, a certified statement of conviction and disposition, and additional court documents. On May 25, 2016, USCIS, again

4

through the Texas Service Center, approved Gonzalez's DACA renewal request for a two-year term from May 25, 2016 to May 24, 2018.

On March 13, 2018, Gonzalez filed another renewal request, which USCIS processed through its Nebraska Service Center. Gonzalez included the certified statement of conviction and disposition related to the October 2015 arrest with his filing. Miller, the Nebraska Service Center Director, issued an RFE on August 13, 2018, against requesting additional documents related to Gonzalez's October 2015 arrest and court case. Gonzalez responded on August 30, 2018, providing the arrest report and the certified statement of conviction and disposition, among other documents. After receiving this information, USCIS approved Gonzalez's DACA renewal request for an additional two-year term from November 2, 2018 to November 1, 2020.

Gonzalez filed his latest DACA renewal request on June 24, 2020, again attaching the certified statement of conviction and disposition related to his October 2015 arrest. USCIS again processed the request through the Nebraska Service Center. On August 28, 2020, Miller issued a Notice of Intent to Deny ("NOID"). The NOID indicated that it appeared USCIS had erroneously granted his prior DACA request given that Gonzalez's conviction for reckless conduct "stemmed from a Domestic Battery arrest" and that domestic violence offenses constitute significant misdemeanors, which DACA guidelines indicate disqualify an applicant from obtaining deferred action. Doc. 1 ¶ 36. The NOID gave Gonzalez the opportunity to respond with any additional information or argument to overcome the stated grounds for USCIS' intended denial of his renewal request.

Gonzalez did so on September 19, 2020, resubmitting the certified statement of conviction and disposition as well as a cover letter from his attorney reiterating that he had not been convicted of a domestic battery. But on October 5, 2020, Miller issued a decision denying

5

Gonzalez's renewal request, stating that because Gonzalez had been convicted of a significant misdemeanor, "USCIS has determined, in its unreviewable discretion, that [Gonzalez] ha[s] not demonstrated that [he] warrant[s] a favorable exercise of prosecutorial discretion and it will not defer action in [his] matter." *Id.* ¶ 43.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Here, Defendants mount a factual challenge, for which the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.*; *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

## ANALYSIS

Defendants argue that the Court lacks jurisdiction to consider Gonzalez's challenges to the denial of his DACA renewal request. Although Gonzalez's complaint challenges the denial as arbitrary and capricious and contrary to law in violation of the APA and as a denial of procedural due process in violation of the Fifth Amendment, Gonzalez has since withdrawn the procedural due process claim, leaving only his claim arising under the APA.[4] The APA allows for judicial review of agency decisions except where (1) "statutes preclude judicial review" or (2) "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Defendants contend that both exceptions apply and bar the Court's review of Gonzalez's claims.

---

[4] Gonzalez also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, but the Declaratory Judgment Act does not provide the Court with an independent basis of jurisdiction, *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018).

6

### A. Section 1252(g)

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."[5] 8 U.S.C. § 1252(g). The Supreme Court has emphasized that § 1252(g) applies narrowly only to the three actions addressed in the section: "decision[s] or action[s]" to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). But it also clarified that § 1252(g) protects "'no deferred action' decisions and similar discretionary determinations" from judicial review. *Id.* at 484–85; *see also id.* at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion.").

Here, Gonzalez does not dispute that DACA is a form of deferred action. And courts across the country have consistently held that § 1252(g) bars challenges to DACA eligibility determinations. *See, e.g.*, *Jaquez-Estrada v. Barr*, 825 F. App'x 538, 542–43 (10th Cir. 2020) (courts lack jurisdiction under § 1252(g) to review decisions of whether to extend DACA relief); *Vasquez v. Aviles*, 639 F. App'x 898, 901 (3d Cir. 2016) ("[Section 1252(g)] deprives all courts of jurisdiction to review a denial of DACA relief because that decision involves the exercise of prosecutorial discretion not to grant a deferred action."); *Gondal v. U.S. Dep't of Homeland Sec.*, 343 F. Supp. 3d 83, 91 (E.D.N.Y. 2018) ("The statute [§ 1252(g)] precludes judicial determination of DACA eligibility and excludes review of deferred action from the jurisdiction of this Court."); *Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1339 (N.D. Ga. 2017) ("The Court agrees

---

[5] Although § 1252(g) refers to only the Attorney General, "pursuant to the Homeland Security Act, references to the Attorney General in § 1252 now also include DHS, and § 1252(g) applies equally to both." *Albarran v. Wong*, 157 F. Supp. 3d 779, 786 (N.D. Ill. 2016).

with Defendants that § 1252(g) strips this Court of jurisdiction to review the government's ultimate discretionary determination as to Plaintiff's DACA status.").

But Gonzalez argues that § 1252(g) does not apply in this case because he does not challenge Defendants' decision not to grant deferred action but rather Defendants' failure to "follow their own procedures during the process of adjudicating the DACA application." Doc. 19 at 3. Indeed, some courts have found § 1252(g) does not bar consideration of a claim that USCIS did not follow non-discretionary procedures for processing DACA applications. *See Garcia Herrera v. McAleenan*, 379 F. Supp. 3d 1143, 1150 (E.D. Wash. 2019) ("[T]he fact that USCIS has the ultimate discretionary authority to grant or deny an application for deferred action under DACA does not mean that every determination made by USCIS regarding the application, including the steps taken to review it, are necessarily discretionary and not subject to judicial review. In this case, Defendants' alleged failure to follow the procedures detailed in the SOP does not implicate agency discretion."); *Gondal*, 343 F. Supp. 3d at 92 (procedural due process challenge not foreclosed by § 1252(g) because it "challenges the non-discretionary process by which DACA statuses are decided, not the decision to grant or deny deferred action"); *Coyotl*, 261 F. Supp. 3d at 1340 ("[T]he Court is not deprived of jurisdiction by § 1252(g) to consider whether Defendants followed their own procedures in denying Plaintiff's application for DACA renewal or terminating her DACA status."). In those cases, however, the plaintiff challenged USCIS' failure to follow the process for reviewing a DACA application, such as its failure to issue an RFE or NOID before denying a DACA application. *See Garcia Herrera*, 379 F. Supp. 3d at 1150; *Coyotl*, 261 F. Supp. 3d at 1342–43. Here, Gonzalez has abandoned his procedural due process claim, leaving him only with his APA challenge that Defendants improperly denied his request based on a misapplication of the criminal history requirement.

8

Although Gonzalez questions whether a reckless conduct conviction, even if it stems from a domestic violence offense, qualifies as a significant misdemeanor for DACA purposes, the resolution of that question lies within USCIS' discretion and so does not fall outside the confines of § 1252(g). *See E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) (§ 1252(g) precludes judicial review of challenges to DHS' "legal authority" to execute a removal order because "[o]therwise, § 1252(g) would be a paper tiger; any petitioner challenging the execution of a removal order could characterize his or her claim as an attack on DHS's 'legal authority' to execute the order and thereby avoid § 1252(g)'s bar."); *Medina v. U.S. Dep't of Homeland Sec.*, 408 F. Supp. 3d 1224, 1238 (W.D. Wash. 2019) (because the plaintiff no longer challenged the government's compliance with its non-discretionary procedures that ultimately led to the termination of his DACA status and instead now only challenged "the Government's discretionary decision to deny his application to renew his DACA status," the Court lacked jurisdiction to address the remaining claim). Indeed, as the DACA SOP emphasizes, "DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less," and "[n]otwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances." Doc. 16-2 at 91. Thus, because Gonzalez does not challenge any non-discretionary aspect of Defendants' review of his renewal request, § 1252(g) bars consideration of his claim. *See Young Dong Kim v. Holder*, 737 F.3d 1181, 1185 (7th Cir. 2013) (claim that agency did not follow an internal memorandum in deciding whether to exercise prosecutorial discretion barred from review by § 1252(g)); *Medina*, 408 F. Supp. 3d at 1238 n.118 (plaintiff's

9

allegations did not amount to a claim that "the Government violated a non-discretionary duty under the DACA" where, among other things, "the Government retains significant discretion in considering issues of criminality").

### B. Section 701(a)(2)

Additionally, Defendants argue that the Court does not have jurisdiction over Gonzalez's APA claim because the DACA decision is one "committed to agency discretion." 5 U.S.C. § 701(a)(2). Even Gonzalez acknowledges that, to the extent § 1252(g) bars a claim from review as discretionary, so does § 701(a)(2). Doc. 19 at 6 (citing *E.F.L.*, 986 F.3d at 965); *see also Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 574 (7th Cir. 2017) (a plaintiff "cannot avoid the jurisdictional bar established by 8 U.S.C. § 1252 simply by raising a claim under" the APA because § 701(a)(2) prohibits review of discretionary decisions). For the sake completeness, nonetheless, the Court also addresses his remaining arguments as to the applicability of § 701(a)(2) here.

A decision is within an agency's discretion where the applicable statutes and regulations do not provide any "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Gonzalez argues that the Court has a legal standard against which to compare Defendants' actions: Illinois state law defining reckless conduct and domestic battery. But this ignores the fact that the DACA SOP does not follow Illinois law, instead using its own definitions for what qualifies as a significant misdemeanor, and that the DACA SOP emphasizes that the decision to grant deferred action remains discretionary, even in the determination of what criminal activity is disqualifying. The DACA SOP thus "preserve[s] an agency's unfettered discretion to deny a request for deferred action *even if* an alien satisfies certain objective criteria," meaning that § 701(a)(2) applies. *See Rueda*

*Vidal v. U.S. Dep't of Homeland Sec.*, No. 18-9276, 2019 WL 7899948, at *9 (C.D. Cal. Aug. 28, 2019), *rev'd on other grounds*, *Rueda v. Bolton*, 822 F. App'x 643 (9th Cir. 2020).

Gonzalez also argues that because the Supreme Court recently concluded that it could review the rescission of the DACA program as a whole, the Court similarly can consider the individual decision at issue here. *See Regents*, 140 S. Ct. at 1906 ("[T]he DACA Memorandum does not announce a passive non-enforcement policy; it created a program for conferring affirmative immigration relief. The creation of that program—and its rescission—is an 'action [that] provides a focus for judicial review.'" (quoting *Chaney*, 470 U.S. at 832)). But the Supreme Court in *Regents* did not address individual DACA decisions, which remain committed to agency discretion. *See Rueda Vidal v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2021 WL 1731606, at *9 (C.D. Cal. Apr. 30, 2021) (individual DACA decisions remain unreviewable under § 701(a)(2) after *Regents* because "the Supreme Court did not scrutinize the role of discretion in rendering any individual DACA decision" and "did not disturb the Ninth Circuit's conclusion that 'there is no protected *entitlement* in . . . the initial grant of deferred action under DACA" (citation omitted)). Therefore, the Court concludes that § 701(a)(2) also deprives the Court of subject matter jurisdiction over Gonzalez's claims.[6]

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [16]. The Court dismisses this case without prejudice for lack of subject matter jurisdiction. Case terminated.

Dated: October 18, 2021

SARA L. ELLIS
United States District Judge

---

[6] Because the Court lacks subject matter jurisdiction over Gonzalez's claims, the Court does not address Defendants' arguments that he has not sufficiently stated a claim.

11